UNITED STATES DISTRICT COURT
Northern District of Texas
(Amarillo Division)

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL - 2 2020
CLERK, U.S. DISTRICT COURT
By _____ Deputy

JOSE SANTILLAN )
    Petitioner/Defendant, )
)
)
v. )   USDC No. 2:17-CR-00029-D-BR(1)
)
)
UNITED STATES of AMERICA, et al; )   2-20CV-171-Z
    Respondent. )
)
)

MEMORANDUM IN SUPPORT OF
MOTION UNDER 28 U.S.C. § 2255
TO VACATE SET ASIDE OR CORRECT
A SENTENCE BY A PERSON IN
FEDERAL CUSTODY

    **COMES NOW**, <u>Jose Santillan</u> in pro se hereinafter Petitioner, and moves this Honorable Court for a Motion to Vacate, Set Aside, or Correct a sentence, pursuant to Rules Governing Section 2255 proceedings for the United States District Courts.

    Petitioner makes this request so that he may immediately challenge the insufficiency of evidence to support the conviction on count one. The district court's evidence included as relevant conduct of a drug transaction that occurred in Portales, New Mexico.

**INTRODUCTION**

This is an appeal from a conviction after a jury trial and the total aggregate sentence of 212 months for the offense of conspiracy to distrbute and possess with intent to distribute methamphetamine.

On March 30, 2017, Jose Santillan (Santillan) was named in a one count indictment charging him with conspiring with Guadalupe Vargas Mayorga (Vargas) and other persons known and unknown to the grand jury to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of U.S.C. § 846.

On or about December 4, 2017 through December 6, 2017, Santillan pleaded not guilty and was tried before a jury. On December 6, 2017, Santillan was found guilty of the offense alleged in the single count indictment.
At the jury trial, the goverment essentially put on evidence from several narcotic officers: an undercover officer: and Vargas- that on February 2, 2016, an undercover officer negociated and purchased from Vargas eight ounces of methamphetamine (approximately 226.8 grams).
The undercover officer testified to negociating the February 2, 2016 purchase, and several other purchases, with Vargas. The purchase of the eight ounces on February 2, 2016, occurred at approximately 7:21 p.m. in a Walmart in Amarillo, Texas. Guadalupe Vargas Mayorga (Vargas), the named co-conspirator, testified that the source of the eight ounces of methamphetamine was Santillan.

However, the undercover officer admitted that he did not know where Vargas got the methamphetamine. In fact, none of the officers ever observed or witnessed Santillan deliver the eight ounces of methamphetamine to Vargas. Moreover, the officers' surveillance at Vargas was inturrupted between 4:18 p.m. and 6:08 p.m. On February 2, and the officers had no idea where Vargas was during this nearly two-hour period.

2

1  At approximately 6:09 p.m. Vargas was seen meeting with an identified individual
2  driving a white Dodge pickup, and at that time, Vargas climbed into the bed of
3  the pickup and opened the lid on a grill that was sitting in the bed and then
4  closed the grill. After the eight ounces were purchased from Vargas on
5  February 2, the officers did not follow the money to see where it was taken.

6  Santillan's attorney moved for a directed veredict after the government
7  rested and renewed the motion at the close of the case. After the jury trial
8  and veredict, a presentence report was prepared. The probation officer found
9  that Santillan's base offense level was 34.  In determining the base offense
10 level, the probation officer included the eight ounces purchased from Vargas on
11 February 2, 2016, which tested as 192.2 grams of actual methamphetamine, and
12 converted to 3,844 kilograms of marijuana. The officer included in the amount
13 another 963.9 grams of methamphetamine based on Vargas' testimony concerning
14 other occassions on which Santillan had supplied Vargas, converting to another
15 1,927.8 kilograms of marijuana. The probation officer also included another
16 8,328 grams of liquid methamphetamine that was transported from Mexico to
17 Portales, New Mexico on February 2, 2016, this amount converting to another
18 16,656 kilograms of marijuana.
19 The probation officer enhanced the base offense level two offense levels on the
20 basis that the liquid methamphetamine from Portales, New Mexico offense was
21 imported from Mexico. The probation officer included another enhancement based
22 on the finding that Santillan maintained a premise for the purpose of
23 manifacturing or distributing a controlled substance. With the total offense
24 level 38 and criminal history category 1. Santillan's guideline imprisonment
25 range was 235 - 293 months.

26 Santillan's attorney objected to the probation officer including the
27 liquid methamphetamine that was found in Portales, New Mexico on the basis that
28 there was no credible evidence that Santillan had anything to do with that

transaction. He also objected to the two level enhancement for maintaining premise for distribution of drugs. He then objected to the grounds that Santillan had no knowledge that the liquid methamphetamine in the Poratles, New Mexico case was from Mexico. Santillan argued that his base offense level and adjusted offense level should have been a level 32. At a criminal history category I, his imprisonment range should have been 121-151 months.

The probation officer filed an addendum to the PSR rejecting Santillan's objections. At the sentencing hearing, Santillan persisted in his objections to the PSR. The government presented evidence to support the inclusion of the liquid methamphetamine from Portales, New Mexico. However there was no testimony presented that Santillan participated in the transaction involving the liquid methamphetamine from Portales, New Mexico. In fact the testimony was that the liquid methamphetamine was suppoused to be delivered to someone named Gordo in Amarillo. The government merely presented evidence that there were phone calls between some phone numbers allegelly connected to Santillan and his common law wife and a phone number connected to Gordo. There was absolutely no evidence presented that showed Santillan was involved in the New Mexico transaction.

The district court sustained the objection to the two level enhancement for maintaining a premise, but overruled the remainder of Santilla's objections. Accordingly, Santillan's advisory imprisonment range was 188-235. Santillan's attorney renewed his objections to the court's rulings. The distrct court sentenced Santillan to 212 months.

POINTS AND AUTHORITIES
WITH
**ARGUMENTS**

I. The evidence was isufficient to support a conviction on count one because the government failed to prove beyond a reasonable doubt that Santillan was the source of the eight ounces of methamphetamine sold by Vargas to the undercover officer.

  a)

   Santillan's trial attorney preserved this issue by properly moving for a directed veredict at the conclusion of the government's case and renewing the motion at the close of case. Accordingly, the sufficiency of the evidence is reviewed de novo. **United States v. Moreland**, 665 F.3d 137, 148 (5th Cir.2011) citing **United States v. Williams**, 602 F.3d 313, 314-15 (5th Cir. 2010.).

  b)

   "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against a conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." **In re Windship**, 397 U.S. 358, 364 (1970).

   Dispite this constitutional principle, judges must be highly diferential to the jury's veredict of conviction, and this court will review the evidence in light most favorable to the prosecution. **United States v. Moreland**, 665 F. 3d at 148.

   "In deciding whether the evidence was sufficient, we review the evidence in light most favorably to the veredict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." **United States v. Shum**, 496 F. 3d 390, 391 (5th Cir. 2007).

" [A] veredict may not rest on mere suspicion, speculation, or conjucture, or on an overly attenuated piling of inference on inference."
United States v. Rojas-Alvarez, 451 F.3d 320,333 (5th Cir. 1993), quoting United States v. Pettigrew, 77 F.3d 1500,1521 (5th Cir. 1996).

"To convict a defendant of conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt: (1) the existence of an agreement to violate the drug laws and that each co-conspirator (2) knew of, (3) intended to joint, and (4) voluntarily participated in the conspiracy."
United States v. Westbrook, 119 F.3d 1176, 1189 (5th Cir. 1997).

"As long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution or leniency, may be constitutionally sufficient evidence to convict." Id. at 1190.

A conviction may rest solely on the uncorroborated testimony of one accomplice if the testimony is not insubstantial on its face."
United States v. Cordea Carrasco, 830 F.2d 41, 44 (5th Cir. 1987).

In Mr. Santillan's case, the testimony of Vargas is insubstantial on its face and incredible.

II. The district court clearly erred by including as relevant conduct the liquid methamphetamine intercepted in Portales, New Mexico, when there was absolutely no evidence showing that Santillan was involved in that transaction.

   a) **Standard of review**

"A finding by district court that unadjudicated conduct is part of the same course of conduct or common scheme or plan is a factual determination subject to review under the clearly erroneous standard."
United States v. Rhine, 583 F.3d 878, 884-5 (5th Cir. 2009).

"A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." Id.

6

(b) **Applicable law**

The Guidelines provide that in determining the base offense level, specific offense characteristics and adjustments in Chapter Three, the court shall include all relevant conduct. The Guidelines specifically provide that "relevant conduct" includes, in part:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, iduced, procured, or willfully caused by the defendant, and

(B) in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in connection with others, whether or not charged as a conspiracy), all acts and omissions of others that were- **(i)** within the scope of the jointly under taken criminal activity, **(ii)** in furtherance of that criminal activity, and **(iii)** reasonably foreseable in connection with that criminal activity; that ocurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivision (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction.

"A defendant convicted of a drug offense is sentenced based on the amount of drugs involved in the offense." **United States v. Rhine, 583 F.3d at 885.** However, "the base offense level can reflect quantities of drugs not specified in the count of conviction if they were part of the same course of conduct or a part of a common scheme or plan as the count of conviction." Id. quoting **United States v. Moore, 927 F.3d 825, 827 (5th Cir. 1991).**

In the present case, the probation officer and district court clearly erred by including the drug amount from the liquid methamphetamine that was

intercepted on February 8, 2016, in Portales, New Mexico for at least two reasons. First, the government never presented any evidence that Santillan was even involved in this transaction. Santillan's attorney introduced into evidence the DEA-6 report of investigation concerning the interception of the liquid methamphetamine. A thorough review of the DEA report reveals that there is absolutely no reference in that report to Mr. Santillan. There is absolutely nothing in that report connecting Mr. Santillan in any way to this transaction. At the sentencing hearing, the government introduced some telephone records to try to connect Mr. Santillan, but without something more, the records merely reflect that some numbers connected to either Mr. Santillan or his wife appear on the phone records for the telephone number associated with "Gordo".

The government's evidence wholly fails to show even by implication that there was any kind of agreement with Santillan regarding the liquid methamphetamine found in New Mexico. The government's evidence fails to show that the liquid methamphetamine fell within the scope of any jointly undertaken criminal activity, in furtherance of that activity, or that it was reasonably foreseeable in connection with a jointly undertaken criminal activity. The criminal conduct surrounding the February 8, 2016, liquid methamphetamine case in Portales, simply fails to meet a single criteria required for conduct in jointly undertaken criminal activity to qualify as relevant conduct. **See USSG § 1B1.3(a)(1)(A) and (B).**

Second, with regard to offenses covered by USSG § 1B1.3(a)(2), the government has failed entirely to show that the conduct surrounding the liquid methamphetamine case was part of the same course of conduct or common scheme or plan. In fact, there is not one shred of evidence tending to show a common scheme or plan of Santillan's offense of conviction, and certainly no analysis was made to that effect. There simply has been no evidence presented to support a finding that this conduct quilifies as relevant conduct based on

8

the same course of conduct or common scheme or plan lenguage. See **United States v. Rhine, 583 F.3d 878,885.**

The fact that the government has presented not one piece of evidence that supports the conclusion that Mr. Santillan was involved in this case, simply renders an analysis of the factors listed in USSG § 1B1.3, application note 9, meaningless. There has to be some evidence to show that Mr. Santillan was somehow actually involved in the liquid methamphetamine transaction before there can be any meaningful analysis that the conduct was either part of the same course of conduct or part of a common scheme. There is no such evidence. Reducing the quantity of methamphetamine by substracting the liquid methamphetamine from Portales, New Mexico, Santillan's base offense level should have been a level 32. Eliminating the 2 level increase for that methamphetamine coming from Mexico results in an adjusted offense level 32. At a criminal history category I, Santillan's imprisonment range should have been 121-151 months.

## CONCLUSION

Petitioner respctfully requests that this Honorable Court reverse and vacate his conviction in this case, and in the alternative, remand for re-sentencing.

Therefore, this motion was file this __6__ day of __25__ ,2020.

Respecfully Submitted,

Jose Santillan# 55638-177
Federal Correctional Institution
1900 Simler Ave,
Big Spring, TX 79720

9



Clerk of Court:
United States District Court
Northern District of Texas
205 S.E. 5th Ave., Room 133
Amarillo, TX 79101



RECEIVED
JUL -2 2020
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Jose Santillan #55638-177
Federal Correctional Institution
1900 Simler Ave.
Big Spring, TX 79720

7018 1830 0001 1521 3597

CERTIFIED MAIL